# UNITED STATES DISTRICT COURT

# DISTRICT OF MAINE

| | |
|---|---|
| **DONALD DIMAURO,** ) | |
| ) | |
| **PLAINTIFF** ) | |
| ) | |
| v. ) | **CIVIL NO. 2:16-CV-0071-DBH** |
| ) | |
| **SPRINGFIELD TERMINAL RAILWAY** ) | |
| **COMPANY,** ) | |
| ) | |
| **DEFENDANT** ) | |
| ) | |

## DECISION AND ORDER ON DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

The defendant's argument that its "investigation" of the plaintiff could not amount to adverse action fails for the same reasons as in <u>Short v. Springfield Terminal Railway Co.</u>, 2:16-cv-00074-DBH. There are some differences in the testimony about what the plaintiff feared, but ultimately there is a jury question on that issue. Nevertheless, the defendant's motion for summary judgment (ECF No. 33) is **GRANTED** because the plaintiff does not have sufficient evidence to reach a jury on causation.

### FACTS

I take the facts in the light most favorable to the plaintiff. The plaintiff Donald DiMauro reported an apparent violation of federal railway regulations on the part of a supervisor, Jeff Dearmin, to the Federal Railway Administration

(FRA).[1] The report resulted in an investigation, and an FRA inspector visited the yard where DiMauro worked.[2] The inspector interviewed DiMauro on at least two occasions, one of which occurred in the crew room where other employees could see.[3] Dearmin expressed to other employees that he was going to find out who "ratted him out" and personally retaliate against that person.[4] Ultimately Dearmin learned that it was DiMauro who had reported on him.[5] Dearmin also told other employees that at one point during the FRA investigation, although he was unsure whether he would receive any discipline, the President of the Railway, David Fink, slapped him on the back and told him, "Don't worry Jeff, I have got your back."[6] Fink meets with six executive vice presidents and heads from all departments, including the head of safety, every weekday morning at 8 A.M., and they discuss the specifics of the railway's daily operations.[7]

---

[1] Def.'s Statement of Material Facts ¶ 13 (ECF No. 34) (Def.'s SMF); Pl.'s Response to Def.'s Statement of Material Facts ¶ 13 (ECF No. 38) (Pl.'s RSMF). DiMauro initially contacted George Casey, General Chairman for the labor organization that represents conductors on Springfield Terminal Railway Company, who then reported the incident to the FRA. Def.'s SMF ¶¶ 13–16; Pl.'s RSMF ¶¶ 13–16.

[2] Def.'s SMF ¶ 16; Pl.'s RSMF ¶ 16.

[3] Def.'s SMF ¶ 16; Pl.'s RSMF ¶ 16. I do note that the plaintiff admitted the defendant's statement that "DiMauro does not know if anyone observed his meeting with Healey, and does not believe that anyone from management was present to observe his meeting with Healey." Def.'s SMF ¶ 16; Pl.'s RSMF ¶ 16. Under Local Rule 56(f), however, I disregard statements of fact not properly supported by record material, and the cited portion of DiMauro's testimony actually refers to his first interview with Healey, DiMauro Dep. Tr. 33:20–34:2 (ECF No. 34-5), while DiMauro also testified that his second meeting with Healey occurred in the crew room at Rigby, with "a bunch of people" present and "crews coming and going during that time," id. 36:12–20. Taking the facts in the light most favorable to the plaintiff, at least the second interview with the FRA inspector happened in the sight of other employees. See also Pl.'s Statement of Additional Material Facts ¶ 40 (ECF No. 38) (Pl.'s SAMF); Def.'s Response to Pl.'s Statement of Additional Material Facts ¶ 40 (ECF No. 42) (Def.'s RSAMF).

[4] Pl.'s SAMF ¶ 44; Def.'s RSAMF ¶ 44.

[5] Pl.'s SAMF ¶ 48; Def.'s RSAMF ¶ 48.

[6] Pl.'s SAMF ¶ 45; Def.'s RSAMF ¶ 45.

[7] Pl.'s SAMF ¶ 61; Def.'s RSAMF ¶ 61.

On September 12, 2014, the FRA inspector prepared an Operating Practices Violation Report Form recommending a civil penalty for Dearmin's serving as a conductor without proper qualifications, in violation of 49 C.F.R. § 242.105(f).[8]  President Fink has stated by declaration that he did not know that DiMauro had "spoken to an FRA inspector" or "had anything to do with any investigation into Mr. Dearmin's actions."[9]

On October 7, 2014,[10] there was a verbal interchange between DiMauro and President Fink that six others witnessed.[11]  On November 9, 2014, DiMauro was served with disciplinary charges that Fink initiated.[12]  Fink asserts that DiMauro had told him on October 7 that DiMauro's locomotive was not ready or running, but that when Fink investigated with others, he learned there was nothing wrong with any of the locomotives and concluded that DiMauro had lied to him.[13]  DiMauro contends that this description of what he said to Fink at the October 7 meeting was "a blatant fabrication,"[14] that his locomotive was in fact ready, and that he had told Fink that he was waiting until "Amtrak goes by."[15]  Four other employees present at the Fink-DiMauro meeting testified at a

---

[8] Pl.'s SAMF ¶ 52; Def.'s RSAMF ¶ 52; Pl.'s Ex. 1 at D1137–38 (ECF No. 38-1).  Following the September 12, 2014 report and after the alleged retaliation, the FRA ultimately proposed a $5,000 civil penalty in a letter to the defendant, dated February 6, 2015.  Pl.'s Ex. 1 at D1136 (ECF No. 38-1).
[9] David Fink Decl. ¶ 4 (ECF No. 34-15).
[10] The plaintiff posits in his briefing and statement of additional material facts that this exchange with Fink occurred on November 7, 2014, Pl.'s SAMF ¶ 53; Pl.'s Opp'n to Def.'s Mot. Summ. J. 5 (ECF No. 37), but this appears to be a typographical error, as he has also admitted in his statement of material facts that the exchange occurred on October 7, Def.'s SMF ¶ 22; Pl.'s RSMF ¶ 22.
[11] Def.'s SMF ¶ 22; Pl.'s RSMF ¶ 22.
[12] Pl.'s SAMF ¶ 56; Def.'s RSAMF ¶ 56.
[13] Def.'s SMF ¶¶ 23–26.
[14] Pl.'s Opp'n to Def.'s Mot. Summ. J. 8 (ECF No. 37); Pl.'s SAMF ¶ 59; see also Pl.'s RSMF ¶¶ 23–26.
[15] Pl.'s SAMF ¶¶ 53–54.  Amtrak uses the Railway's tracks.

3

December 18, 2014, hearing that they had not heard DiMauro say that his locomotive was not ready.[16]  On December 30, 2014, DiMauro learned that none of the charges against him was sustained.[17]

## ANALYSIS

In the face of Fink's sworn denial that he had any knowledge of DiMauro's role in the FRA investigation of Dearmin,[18] DiMauro argues that there is nevertheless enough circumstantial evidence to go to the jury on whether Fink initiated the adverse action because DiMauro had initiated a whistle-blowing report with the FRA.  DiMauro does not make any argument of cat's paw liability,[19] but only that Fink took retaliatory action against him because Fink knew that DiMauro had reported Dearmin.  While I can understand DiMauro's skepticism given the bizarre interchange with Fink if the facts are as DiMauro states, a jury nevertheless would have to engage in rank speculation to determine that Fink knew at the time he initiated disciplinary proceedings that DiMauro had reported Dearmin's conduct to the FRA,[20] and that DiMauro's report was the reason for Fink accusing DiMauro of violating Carrier Safety Rules.[21]  Accord

---

[16] Pl.'s SAMF ¶ 59; Def.'s RSAMF ¶ 59.
[17] Def.'s SMF ¶ 32; Pl.'s RSMF ¶ 32; Def.'s Ex. T (ECF No. 34-21).
[18] David Fink Decl. ¶ 4 (ECF No. 34-15).
[19] "Cat's paw" liability occurs when the plaintiff seeks "to hold his employer liable for the animus of a supervisor who was not charged with making the ultimate employment decision." Staub v. Proctor Hosp., 562 U.S. 411, 415–16 & n.1 (2011); see also Lowery v. CSX Transportation, Inc., No. 16-1634, 2017 WL 2304229, at *1 (4th Cir. May 26, 2017).
[20] To reach even this preliminary point, the plaintiff would have the jury infer that Fink somehow learned of DiMauro's role in reporting Dearmin from the 8 A.M. department head meetings, Pl.'s Opp'n to Def.'s Mot. Summ. J. 7 (ECF No. 37); Pl.'s SAMF ¶¶ 61–62, despite Fink's and Cynthia Scarano's declarations to the contrary, Def.'s RSAMF ¶¶ 61–62; Def.'s Ex.'s O & N.
[21] The notice of hearing advised DiMauro that on October 7, "you allegedly informed Mr. David Fink that your locomotive was not ready, in response to his Inquiry as to what you were doing" in violation of Carrier Safety Rules, PGR-C and PGR-L.  Def.'s SMF ¶ 27; Pl.'s RSMF ¶ 27; Def.'s Ex. S (ECF No. 34-20).

Conrad v. CSX Transportation, Inc., 824 F.3d 103, 109 (4th Cir. 2016) ("[U]nsupported inferential leaps are no adequate substitute for actual evidence."). Direct evidence is not required, accord Consolidated Rail Corp. v. U.S. Department of Labor, 567 F. App'x 334, 338 (6th Cir. 2014), but the plaintiff needs more than he has here.

## CONCLUSION

The defendant's motion for summary judgment is **GRANTED**.

**SO ORDERED.**

**DATED THIS 26TH DAY OF JULY, 2017**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**